In the Matter of the Claim of Antonio Lopez, Appellant, v Superflex, Ltd., et al., Respondents. Workers' Compensation Board, Respondent. [819 NYS2d 165]—

Rose, J. Appeals (1) from a decision of the Workers' Compensation Board, filed June 16, 2005, which ruled that claimant did not sustain a causally related occupational disease and rescinded all awards, and (2) from a decision of said Board, filed October 6, 2005, which denied claimant's request for reconsideration or full Board review.

While working with certain solvents and other toxic chemicals in his job of painting and packing industrial hoses manufactured by his employer, claimant learned that he was suffering from acute bilateral kidney failure. He now requires regular dialysis and a transplant. Alleging that his kidneys were damaged by exposure to chemicals used in his occupation, claimant filed a claim for workers' compensation benefits. The Workers' Compensation Board rejected his claim, finding that "[t]here is no evidence in the record as to what chemicals the claimant was exposed to which would have caused his renal dysfunction," and that even if a chemical used by the employer could cause that condition, OSHA records show that "there was no harmful chemical exposure at [the employer's place of business] during the relevant time." Claimant appeals.

If the Board's determination is supported by substantial evidence, it will be upheld (see Matter of Lupascu v UTOG 2-Way Radio, 30 AD3d 640, 641 [2006]; Matter of Gilman v Champlain Val. Physicians Hosp., 23 AD3d 860, 861 [2005]). It cannot be sustained, however, "when it is clearly based on incorrect facts or an inaccurate reading of the record" (Matter of Evans v Jewish Home & Hosp., 1 AD3d 736, 738 [2003], appeal dismissed 2 NY3d 823 [2004]; see Matter of LaFlamme v S.S. Elec. Repair Shop, Inc., 12 AD3d 732, 733 [2004]). Here, claimant testified that he worked with inks and solvents which were shown by other evidence to contain lead, chromium, methyl ethyl ketone, cyclohexanone, hexone and other toxic chemicals. The employer does not dispute that claimant worked with these chemicals and they are toxic. Also, contrary to the Board's finding, the record does contain material safety data sheets for the inks and

solvents used by claimant and those sheets reflect that kidney damage is a potential hazard of some of these chemicals.

While it is true that neither claimant's medical records nor his medical expert, Jacqueline Moline, identify which of these chemicals caused his kidney failure, Moline did opine with a reasonable degree of medical certainty that it was caused by the chemicals with which he worked. Moline based her conclusion upon the nature of the chemicals used by claimant and the fact that medical testing had eliminated all other common causes of kidney failure (*see Matter of Castiglione v Mechanical Tech.*, 227 AD2d 865, 867 [1996]). Further, although the employer's expert, Michael Aziz, testified that he could not determine what had caused claimant's condition with medical certainty, he did state that it was possible that claimant's exposure to such chemicals caused his renal failure. Thus, the expert medical testimony is not conflicting (*id.* at 866) and the Board erred in rejecting Moline's opinion for which the record provides evidentiary support (*see Matter of O'Malley v Consolidated Edison Co. of N.Y.*, 301 AD2d 814, 815 [2003]; *Matter of Tinelli v Ken Duncan, Ltd.*, 199 AD2d 567, 569 [1993]).

The Board also mischaracterized the OSHA inspection report by describing it as proof of no harmful exposure "during the relevant period of time." The record indicates that the inspection did not occur until March 2001, five months after claimant left work and was diagnosed with kidney failure. In addition, there is no evidence that the conditions at the time of the inspection were similar to those to which claimant had been exposed previously. Rather, the inspection report provides some evidence that the employer's ventilation system was utilized only during such inspections. Also, as to the possibility of harmful exposure, the report advised that the workers' gloves were not resistant to the organic solvents which they were using. Thus, the OSHA report cannot reasonably be viewed as proving that claimant had not been exposed to hazardous chemicals.

In short, the record shows that chemicals capable of causing kidney failure were present at claimant's workplace, he came into contact with those chemicals on a daily basis, he presented medical evidence that his condition resulted from such exposure and the carrier's medical expert was unable to determine any other cause for his condition. On this record, we must conclude that there is insufficient evidence to support the Board's finding that claimant's kidney failure was not shown to have been caused by conditions in his workplace. For that reason, the Board's decisions must be reversed and the matter remitted to the Board (*see Matter of Marcera v Delco Prods., Div. of Gen.*

*Motors Corp.*, 218 AD2d 888, 889-890 [1995], *lv dismissed* 87 NY2d 896 [1995], *lv denied* 88 NY2d 804 [1996]).

Mercure, J.P., Crew III, Mugglin and Kane, JJ., concur. Ordered that the decisions are reversed, with costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.